IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| BROCK BAKER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SUNBURST CONSULTING, INC.,<br><br>Defendant. | CV 16-124-BLG-SPW-TJC<br><br>**FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

Plaintiff Brock Baker brings this action, on behalf of himself and others similarly situated, against Defendant Sunburst Consulting, Inc. ("Sunburst"). His first cause of action alleges violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and his second cause of action alleges violations of North Dakota wage laws. (Doc. 1 at ¶¶ 43-65.)

Now pending is Baker's Motion for Conditional Certification and Notice. (Doc. 23.) Having considered the parties' submissions, the Court recommends as follows.

//

//

1

I.      **Relevant Background**

Baker began his tenure as a Geosteering Consultant ("GC") with Sunburst in roughly January, 2011,[1] as an independent contractor. (Doc. 24-1 at ¶ 3.) In April, 2013, however, Sunburst reclassified Baker and others in his position as employees, and Baker continued to work in that capacity until December, 2014. (*Id.*, ¶¶ 3-4.) Baker states that his job as a GC "was to collect information about the rocks we were drilling through so that the drilling company could 'land' the well in the proper location." (*Id.* at ¶ 5.) Associated tasks included setting up equipment, including gas collection tanks and analysis equipment; running hoses; connecting sensors to a mobile data collection trailer; calibrating machines; and testing the equipment for functionality. (*Id.* at ¶ 7.) Baker then analyzed samples of drill cuttings during the drilling process, including inspecting for oil and testing for "type." The results of this process were recorded in a "mud log." (*Id.* at ¶ 8.) Baker also monitored gamma readings and tested for gases in the soil. (*Id.* at ¶ 9.)

Baker alleges that, though some GCs at Sunburst had geology degrees, Sunburst did not require such a degree and he did not possess one. (*Id.* at ¶ 11.) He attests that the GCs without degrees performed the same work as those with

---

[1] Baker attests in his Sworn Declaration that he "had worked for Sunburst for about 2.5 years" as of April, 2013.

2

degrees, and that the compensation plan was consistent regardless of education. (*Id.* at ¶ 13, 17.)

Baker alleges that Sunburst compensated him with a $24,000.00 annual salary. In addition, he was initially paid a $150.00 day rate, which had increased to $300.00 by the time his employment ended. (*Id.* at ¶ 16.) He contends that he "lived and worked on well sites throughout the drilling process," and "typically worked 12-hour oilfield shifts" beginning at either 6:00 a.m. or 6:00 p.m. (*Id.* at ¶ 14.) He alleges that Sunburst did not track the hours the GCs actually worked, but the GCs generally worked about eighty-four (84) hours per week while drilling, and "often worked more hours when there were problems." (*Id.* at ¶ 15.)

In the instant motion, Baker seeks conditional certification for the FLSA collective action, which would permit court-authorized notices to be sent to potential opt-in plaintiffs. (Doc. 23.) The class proposed by Baker consists of "similarly situated [GCs] employed by Sunburst over the past three years." (Doc. 24 at 1.) Since this action was filed on August 23, 2016, one other GC, Alexa Guttormson, has opted in as a plaintiff.

## II. Parties' Arguments

Baker argues that the Court should conditionally certify a collective action under FLSA, 29 U.S.C. § 216(b), to authorize the issuance of opt-in notices to other GCs that have worked for Sunburst over the past three years. (Doc. 23.) He

argues that the potential class members are similarly situated based on the showing that they all: (1) were employed as GCs by Sunburst; (2) performed similar duties; (3) regularly worked overtime; (4) performed the same core job functions while being treated (and paid) by Sunburst in the same manner; and (5) were denied overtime pay by Sunburst for the same reason. (Doc. 24 at 9.) He further maintains that he "lived and worked with many other [GCs] employed by Sunburst on multiple job sites," and that "all [GCs] employed by Sunburst were paid a salary plus a day rate, performed the same job duties, and worked many hours in excess of forty in a workweek without receiving overtime pay." (*Id*. at 9-10.)

Additionally, he requests that: (1) the proposed notice should be sent to all GCs employed by Sunburst since February 6, 2014 (*Id.* at 11); (2) a reminder notice should be sent out half-way through the notice period, with plaintiffs bearing the cost of the notice (*Id*. at 11-12); (3) the Court order a three-year notice period to remedy Sunburst's willful violation as permitted under 29 U.S.C. § 255(a) (*Id*. at 12); (4) Sunburst produce "a computer-readable list of the names, last known addresses, alternate addresses, email addresses, telephone numbers, work locations, and dates of employment for all [GCs] employed by Sunburst since February 6, 2014" (*Id.* at 13); (5) the Court authorize notice by email (*Id*. at 15); and (6) the Court toll the statute of limitations until notice can be sent out due to the procedural delay created in ruling on the instant motion (*Id.* at 15-16).

Sunburst argues in its Response to Plaintiff's Motion for Conditional Certification and Notice (Doc. 26) ("Response") that: (1) Baker is required to demonstrate that "potential plaintiffs together were victims of a common policy that violated the law" (Doc. 26 at 6 (quoting *Vasquez v. Vitamin Shoppe Industries Inc.*, 2011 WL 2693712, *3 (S.D. N.Y. July 11, 2011)); (2) Baker has failed to meet his burden to show that the GCs were subject to a Sunburst policy that violated the law because he has failed to establish that he and other GCs are not exempt from the FLSA as either learned professionals or highly compensated employees (*Id.* at 7-13); and (3) Baker has failed to demonstrate that he and the other GCs are similarly situated because the claim is premised on alleged misclassification, which is highly individualized and must be determined on an employee-by-employee basis (*Id.* at 13-15).

Regarding Baker's request that the Court toll the statute of limitations, Sunburst argues that: (1) equitable tolling is an extreme remedy that should not be utilized here because Sunburst has not engaged in any wrongful conduct that would have prevented any plaintiff from asserting a claim (*Id.* at 16); (2) the statute of limitations should not be tolled merely because Sunburst has not provided Baker with contact information for potential plaintiffs (*Id.*); (3) Baker has not asked for any such contact information, and the FLSA would not have required Sunburst to provide it even if he had (*Id.* at 17); and (4) normal delays brought on through the

5

course of litigation do not constitute extraordinary circumstances that would justify equitable tolling (*Id*.).

In reply, Baker argues that: (1) plaintiffs have adequately shown there are other employees similarly situated based on job requirements, pay provisions, and misclassification, which prevented payment for overtime (Doc. 34 at 4-5); (2) Sunburst's arguments regarding FLSA exemption are merits-based and therefore premature (*Id*. at 5-7); (3) even if the exemption arguments were appropriate here, Sunburst has the burden of proving that any exemptions apply, and it has failed to do so (*Id*. at 7); (4) GCs should not be considered learned professionals because the expertise they share is based on training and experience, and not education (*Id*. at 8-9); (5) Sunburst failed to present any evidence that its GCs should be considered highly compensated employees (*Id*. at 9-10); (6) GCs in fact are not highly compensated as that term is defined in FLSA regulations (*Id*. at 10-11); (7) the GCs' salaries are not reasonably related to their actual compensation (*Id*. at 12-13); and (8) similarity among the potential plaintiffs "is not defeated due to individualized inquiries regarding the class members' total annual compensation or base salary component because this information can be determined by Sunburst's payroll records." (*Id*. at 13-14).

### III. Legal Standard

Under the FLSA, employees are afforded a private right of action to sue an employer for violations of the act "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). To become a party to such an action, a similarly situated employee must consent, in writing, and the consent must be filed with the court in which the action is brought. Although "similarly situated" has not been defined by the Supreme Court or the Ninth Circuit, the majority of courts within the Ninth Circuit have adhered to a two-step certification procedure for FLSA collective actions. *Kellgren v. Petco Animal Supplies, Inc.*, 2015 WL 5167144, at *2 (S.D. Cal. Sept. 3, 2015); *Bower v. Cycle Gear, Inc*, 2015 WL 2198461, at *1 (N.D. Cal. May 11, 2015); *Guy v. Casal Inst. of Nevada, LLC*, 2014 WL 1899006, at *3 (D. Nev. May 12, 2014).

At step one, generally referred to as the "notice stage," the court makes a preliminary determination whether to conditionally certify a class under § 216(b) and send notice to potential class members, giving them the opportunity to join the action. *Guy*, 2014 WL 1899006 at *3. If a collective action is certified at the notice stage, the court is authorized to monitor the preparation and distribution of notice to the putative class members. *Bower*, 2015 WL 2198461 at *1.

The second step of the certification process, generally prompted by a motion for decertification, occurs at the close of discovery. *Id.* The standard to determine

whether plaintiffs are similarly situated is much stricter.  Courts review several factors in determining the propriety and scope of the class, including "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations." *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 467 (N.D. Cal. 2004).

## IV. Discussion

### A. Notice Stage

In considering conditional certification at the notice stage, courts rely primarily on the pleadings and any affidavits submitted by the parties to determine if the putative class members are similarly situated. *Guy*, 2014 WL 1899006 at *9. The Court applies a fairly lenient standard because the court has minimal evidence to make its determination. *Id.* Essentially, a plaintiff need only make "'substantial allegations that the putative class members were together the victims of a single decision, policy, or plan' in order to make a sufficient showing for certification." *Bower*, 2015 WL 2198461 at *1 (quoting *Thiessen*, 267 F.3d at 1102).

Baker filed two declarations in support of conditional certification, one from himself and another from opt-in plaintiff Guttormson.  Both declarations assert that the declarant was employed by Sunburst as a GC with similar duties, was paid a salary plus a day rate, regularly worked more than forty hours per week, and knew

of other GCs employed by Sunburst who also were paid a set daily rate and did not receive overtime. *See* Docs. 24-1, 24-2.

The Court finds that Baker has met his burden of showing that he and the putative class members are similarly situated. Sunburst argues that several courts have found that merely alleging that a class of employees was wrongly classified as "exempt" does not constitute a showing of an unlawful, institution-wide policy, and therefore is not enough to show that putative class members are similarly situated. (Doc. 26 at 7-13.) Baker, however, provides declarations that go beyond merely asserting conditional certification should be based on an exemption designation. Though the declarations are similarly worded, both declarants state that they: (1) worked at numerous sites; (2) had similar job duties; (3) were paid a salary plus daily rate; (4) regularly worked more than forty hours in a week but were not paid overtime; and (5) talked to and observed other GCs with similar duties, pay and work hours. (*See* Docs. 24-1, 24-2.)

Sunburst argues additionally that Baker has failed to establish that he or other GCs were improperly classified as exempt under either the learned professional or highly compensated employee exemptions. (Doc. 26 at 7-13.) Sunburst ultimately may be correct, of course, that Baker and the other GCs were properly classified as exempt, but "considerations involving the merits of claims are more appropriately addressed at the second stage of the analysis when less facts

9

are in dispute." *Kellgren*, 2015 WL 5167144 at *4.  The Court finds that Baker has made a sufficient showing at this stage to satisfy his low burden.  For example, he contends in his declaration that Sunburst did not require its GCs to have degrees in geology, that GCs with geology degrees performed the same work as GCs without, and that the formal scientific training he did have was not essential to his job as a GC.  (Doc. 24-1 at ¶¶ 11, 13.)  That is a sufficient showing, at this stage, that he was improperly classified as a learned professional.

Similarly, the salary and day rates provided by Baker and Guttormson do not establish that they were highly compensated employees as that term is defined in the FLSA.  (Doc. 24-1 at ¶¶ 16-17; Doc. 24-2 at ¶ 13.)  *See* 29 C.F.R. § 541.601.  As explained above, Sunburst ultimately may be able to prove that Baker, Guttormson, or any other party GC was properly exempted as highly a compensated employee, but that is a determination on the merits properly left for later stages of this litigation.  At this stage, Baker has made a sufficient showing that his base pay rate does not establish him or other GCs to be highly compensated employees.

Sunburst relies heavily on Western District of New York case *Heitzenrater v. Officemax, Inc.*, 2014 WL 448502 (W.D. N.Y. Feb. 4, 2014), for the proposition that Baker "must present at least some factual showing that the putative collective action members are 'similarly situated with respect to the claim that they were

required to perform [non-exempt] duties' in contravention of the formal policy." (Doc. 26 at 9 (quoting *Heitzenrater*, 2014 WL 448502 at *3).) *Heitzenrater* is readily distinguishable, however. In that case, Heitzenrater was attempting to establish that he had been misclassified as an executive employee because his actual job duties differed from his job description. *Heitzenrater*, 2014 WL 448502 at *3. The court required additional information beyond Heitzenrater's description of his own job duties in order to establish that all employees in Heitzenrater's position had similarly incongruent job duties and job descriptions. *Id*. at *3-*4. Here, by contrast, there is no allegation that Baker's and the other GCs' actual job duties, educational attainment levels, or pay structures differ in fact from Sunburst's official policies. For that reason, the necessity for the additional information the court required in *Heitzenrater* is not present here.

Sunburst next argues that Baker is subject to one or more exemptions from the FLSA, and thus complex and highly individualistic issues exist for each individual putative class member. (Doc. 26 at 13-15.) Sunburst argues, for example, that a determination of whether any individual employee qualifies for the "highly compensated employee" exemption requires determining that individual employee's total compensation. (*Id*. at 14.) It argues that these unique circumstances compel rejection of conditional certification. (*Id.*) But again "considerations involving the merits of claims are more appropriately addressed at

11

the second stage of the analysis when less facts are in dispute." *Kellgren*, 2015 WL 5167144 at *4. At the second step of the conditional certification test, the Court considers several factors, including the "disparate factual and employment settings of the individual plaintiffs" and "the various defenses available to defendant which appear to be individual to each plaintiff." *Hensley v. Eppendorf N.A., Inc.*, 2014 WL 2566144 at *6 (S.D. Cal. June 6, 2014) (quoting *Thiessen*, 267 F.3d at 1103)) (internal quotations omitted). Sunburst's arguments regarding the appropriateness of its exemption classification are therefore premature.

### B. Statute of Limitations

Baker makes two arguments in regard to the statute of limitations. First, he argues that the three-year statute of limitations applicable to willful violations should be applied at the conditional certification stage. (Doc. 24 at 12.) Next, he contends the statute of limitations should be tolled from the time he filed the motion for conditional certification until notice is sent to the putative class members. (*Id*. at 15-16.)

In determining whether the three-year statute of limitations applies, the plaintiff must show that the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988). Baker has not made a sufficient showing that Sunburst either knew or showed reckless disregard such that the

Court can make a final determination on this statute of limitations issue. But the final determination should be made at the second stage of the test for certification. Thus, to effectively facilitate notification to putative class members, notice may be sent to those within the three-year statute of limitations. *See Foschi v. Pennella*, 2014 WL 6908862 at * 6 (D. Ariz. 2014).

Baker also argues the Court should impose equitable tolling based on the procedural delay caused by the time required for a court to rule on a motion for conditional certification. (Doc. 24 at 15-16.) Equitable tolling "applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time." *Bower*, 2015 WL 2198461 at *2 (quoting *Stoll v. Runyon,* 165 F.3d 1238, 1242 (9th Cir. 1999)). As a general rule, this equitable relief is awarded only sparingly. *See Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 96 (1990) (finding no basis for equitable tolling of 30-day period for bringing employment discrimination action against United States following receipt of EEOC right-to-sue letter).

Some courts within the Ninth Circuit have allowed equitable tolling in FLSA actions for the delay in deciding a motion for conditional certification, or the potential delay that may occur in providing the information needed to send notice to the putative class members. *See*, e.g., *Guy*, 2014 WL 1899006 at *9; *Small v. U.

*Med. Ctr. of S. Nevada*, 2013 WL 3043454 at *4 (D. Nev. June 14, 2013); *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 543 (N.D. Cal. 2007). These courts have reasoned that allowing the statute of limitations to be tolled during the pendency of a motion for conditional certification balances the interests of both parties. *Adams*, 242 F.R.D. at 543. Plaintiffs bear no fault for the delay because they have sought the information, but defendants are only required to provide the contact information after conditional certification of the collective class. *Id.* The court in *Adams* reasoned that tolling this time period counters any advantage gained by withholding information until the last possible moment, and protects plaintiffs who have diligently sought the information. *Id.*

The Court is persuaded that the procedural delay incurred by the motion for conditional certification in this case warrants equitable tolling, particularly where there is additional delay due to the Findings and Recommendation process issuing from the undersigned referral judge to the presiding judge. The time between filing the motion and the ultimate receipt of the information on putative class members may prejudice some potential plaintiffs. Thus, the Court recommends that the statute of limitations be equitably tolled between the date the motion for conditional certification was filed, and the date the contact information on putative class members is provided to Baker.

### C. Adequacy of Proposed Notice

#### 1. Proposed Notice

Baker has submitted a proposed notice to be used if conditional certification is granted. (Doc. 24-3.) Sunburst's Response is silent regarding the proposed notice. The Court therefore presumes Sunburst has no objection to anything contained in the notice (notwithstanding the objections previously discussed as to whether the notice should be authorized in the first instance). Accordingly, if the motion for conditional certification is granted, the Court recommends that the notice appended to Baker's motion be utilized.[2]

#### 2. Reminder Notice

Baker argues that the Court should authorize a reminder notice to be sent out half-way through the notice period because people often disregard collective action notices, and because Courts "regularly authorize reminder mailings in order to increase the chance that workers will be informed of their rights." (Doc. 24 at 11) Sunburst's Response does not address the reminder notice. Accordingly, the Court is persuaded that a simple reminder notice is advisable because it is possible that the initial notices may be lost before or after receipt by potential class members.

---

[2] Section 2 of Baker's proposed notice identifies August 23, 2017, as the date the lawsuit was filed. The correct date is August 23, 2016. (Doc. 24-3 at 1.)

15

Baker did not submit a propose reminder notice; the Court recommends that Baker be authorized to send reminder notices on the form attached hereto.

### 3. Email Notice

Baker argues that the Court should authorize notice by email and asserts that "[c]ourts frequently utilize e-mail to provide notice of collective actions to potential class members." (*Id*. at 14.) Baker explains that GCs are oilfield workers and, as such, may be away from home for weeks or months at a time. (*Id*. at 15.) As before, Sunburst's Response does not address Baker's request for authorization of email notice. Accordingly, the Court finds good cause for approval of notice by email and recommends that Baker's request therefor be granted.

### 4. Scope of Information Provided

Baker requests "the Court direct Sunburst to produce a computer-readable list of the names, last known addresses, alternate addresses, email addresses, telephone numbers, work locations, and dates of employment for all GCs employed by Sunburst since February 6, 2014." (Doc. 24 at 13.) Sunburst does not materially object to this request; rather, it objects that its refusal to provide such information thus far should not justify tolling the statute of limitations. (Doc. 26 at 16-17.) Sunburst argues that "the FLSA does not require Sunburst to provide contact information before certification" and asserts a "right to disclose contact information for additional employees only if conditional certification is granted."

(*Id*. at 17.) Thus, Sunburst appears to agree that, if conditional certification is granted, it has an obligation to provide contact information to Baker.

With that said, Baker does not assert any unique circumstances or concerns in this case – and the Court finds none – for needing additional information beyond names, mailing addresses, and email addresses. The proposed consent form provides for the recipient to disclose the majority of the requested information on the form, and once a person has decided to opt in, he or she can provide the additional information at that time.

Though Baker requests that the Court use February 6, 2014 as the cutoff date for notices, Baker did not actually file the instant motion until February 8, 2017. Thus, the Court finds that Sunburst must provide a computer-readable list of names, last known addresses, and email addresses for all GCs employed by Sunburst since February 8, 2014.

## V.   Conclusion

Based on the foregoing, IT IS RECOMMENDED that:

(1) Plaintiff's Motion for Conditional Certification and Notice (Doc. 23) be GRANTED in part as follows.

(2) Defendant have seven calendar days to provide Plaintiffs' Counsel, in computer-readable electronic format, the names, mailing addresses, and email addresses of all putative members of the conditionally certified class. This class

should include all Geosteering Consultants employed by Sunburst in the three years prior to the date Plaintiff's motion was filed, February 8, 2017.

(3) Plaintiff's Counsel be given seven additional calendar days to mail the Initial Notice (on the attached form) of the conditionally certified class to all putative class members and to file a Notice in this action that such notices have been mailed. Reminder Notices (on the attached form) may be sent thirty days after the Initial Notice. Plaintiffs must file a notice with the Court indicating the date the Reminder Notices were sent.

(4) All class members must opt in within sixty days of the date the Initial Notices are mailed. No opt-ins should be permitted after that deadline passes.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendation must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 6th day of July, 2017.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge